Christopher J. Nelson (Bar No. 205161)
*cnelson@interplay.com*
Interplay Entertainment Corp.
Suite 502
12301 Wilshire Boulevard
Los Angeles, CA 90025
310-979-7070
310-979-7171 (fax)

*Attorney for Plaintiff*
*Interplay Entertainment Corp.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INTERPLAY ENTERTAINMENT CORP., <br><br> Plaintiff, <br><br> vs. <br><br> TOPWARE INTERACTIVE, INC., and Does 1-20, <br><br> Defendants. | Case No.: CV 10-7168-DMG (JCGx) <br><br> ORDER GRANTING PRELIMINARY INJUNCTION <br><br> Cc:FISCAL |

This matter is before the Court on Plaintiff's *Ex Parte* Application for Temporary Restraining Order ("TRO") and Order to Show Cause re Preliminary Injunction ("*Ex Parte* Application"). For the reasons set forth below, the Motion for Preliminary Injunction is GRANTED.

## I.

## **PROCEDURAL BACKGROUND**

On September 24, 2010, Plaintiff Interplay Entertainment ("Interplay") filed a complaint against Defendant TopWare Interactive, Inc. ("TopWare") and Doe defendants 1 through 10, asserting causes of action for trademark infringement under the Lanham Act, 15 U.S.C. § 1114, and unfair competition under

1  California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.
2  Interplay filed the *Ex Parte* Application on October 4, 2010.  On October 7, 2010,
3  the Court granted Interplay's *Ex Parte* Application and issued the TRO, which
4  became effective upon Interplay's posting a corporate security bond in the amount
5  of $15,000.  Interplay served TopWare with the TRO on October 8, 2010.
6  Interplay obtained the required bond and filed it on October 13, 2010.

7        On October 21, 2010, the Court held a hearing on its Order to Show Cause
8  Why a Preliminary Injunction should not issue.  TopWare did not file a written
9  opposition and did not appear at the hearing.  Following discussions with Plaintiff's
10  counsel, who attended the hearing, the Court grants the Preliminary Injunction for
11  the same reasons set forth in its Order re TRO, as set forth more fully herein.

## II.
## FACTUAL BACKGROUND

14        For more than 25 years, Interplay has developed and published video game
15  software for personal computers and gaming consoles.  Interplay is responsible for
16  many successful video game series, including Fallout, Earthworm Jim, Baldur's
17  Gate, Clayfighter, Descent, and, at issue here, *Battle Chess*. TopWare is also a
18  video game developer and publisher and is an affiliate or subsidiary of Zuxxez
19  Entertainment AG.  Both TopWare and Zuxxez are Interplay's competitors.  (Caen
20  Decl. ¶ 2.)

21        The *Battle Chess* series of video games is an original property that Interplay
22  developed.  The original *Battle Chess*, released in 1988, is a computerized chess
23  game with a fantasy theme.  Its basic concept is to have computer animated chess
24  pieces carry out a player's moves by stalking across the chess board to engage in
25  animated combat. Interplay has published two sequels, *Battle Chess*:  Chinese
26  Chess and *Battle Chess*: 4000, as well as several multi-game collections using
27  various combinations of the titles.  Interplay's successful development and
28  promotion of *Battle Chess* video games for more than two decades has caused

*Battle Chess* to become a valuable property. Interplay has sold *Battle Chess* through both online and traditional brick-and-mortar retailers. Interplay is currently developing an updated version of *Battle Chess*, which it expects to release in 2011. (*Id.* ¶ 3.)

Interplay has registered the trademark *Battle Chess* with the United States Patent and Trade Office, which has assigned the mark registration number 3,519,455. (*Id.*, Ex. 1.) Interplay has continuously sold *Battle Chess* and its sequels and compilations and has not abandoned the *Battle Chess* mark. Interplay has sold thousands of copies of *Battle Chess* games. The purchasing public has come to associate the *Battle Chess* mark with Interplay. (*Id.* ¶ 4.)

On or around June 8, 2010, Interplay learned that TopWare had launched a website promoting a chess video game that TopWare was developing called *Battle vs. Chess*. The website's address is www.battlevschess.com. (*Id.* ¶ 5, Ex. 2.) Based on announcements and promotional material released by TopWare, its parent company, and its distributors, Interplay believes that TopWare's chess video game will have a nearly identical concept as Interplay's *Battle Chess*, featuring fantasy-themed animated chess pieces battling to capture squares on a chess board. Interplay believes that TopWare will sell *Battle vs. Chess* to the same target customers—video gamers, particularly strategy game and chess enthusiasts— through the same distribution channels as *Battle Chess*. (*Id.* ¶ 7.)

After learning of *Battle vs. Chess*, Interplay wrote to TopWare on June 9, 2010 to express its concerns regarding the *Battle vs. Chess* title. (*Id.* ¶ 8, Ex. 4.) Interplay alerted TopWare to the existence of the protected *Battle Chess* mark and requested that TopWare discontinue use of the *Battle vs. Chess* trademark in association with its fantasy chess video games. (*Id.* ¶ 8.)

TopWare, through its managing director, responded that it would continue to use the *Battle vs. Chess* mark but wished to "discuss" the issue. Interplay believes that TopWare has licensed third parties, including SouthPeak Interactive

Corporation, to publish and distribute *Battle vs. Chess* in the United States market. TopWare also lists its video game for pre-order sales through major retailers, including Target, Best Buy, GameStop, and others. (*Id.* ¶ 9, Ex. 5.)

TopWare has changed its release date at least four times. (*Id.* ¶ 12.) On September 2, 2010, SouthPeak, issued a press release announcing that *Battle vs. Chess* would be released commercially on September 28, 2010. (*Id.* ¶ 10.) On September 3, 2010, Interplay again wrote to TopWare demanding that it cease and desist its use of the *Battle vs. Chess* mark. (*Id.* ¶ 11, Ex. 6.) Throughout August and September 2010, the parties negotiated over use of the *Battle Chess* mark. At one point, Interplay believed that it had reached an agreement with TopWare to end the dispute. This agreement, however, was never consummated. (*Id.* ¶ 11.) As of October 4, 2010, the ship date for *Battle vs. Chess* listed on various retailers' websites is October 26, 2010. (*Id.* ¶ 12, Ex. 7.) Video game companies typically manufacture physical copies of video game discs and packaging approximately two weeks prior to the release date. (*Id.* ¶ 13.)

Fantasy-themed chess games are a niche market. Consumers buying *Battle vs. Chess* will likely be diverted from buying Interplay's original *Battle Chess* games or soon-to-be-released *Battle Chess* sequel. TopWare's *Battle vs. Chess* is currently listed for sale between $20 and $40. The "retro" versions of Interplay's *Battle Chess* lineup generally sell for around $6. Interplay has not yet set the price for its forthcoming *Battle Chess* game. (*Id.* ¶ 14.)

Interplay has no control over the content or quality of *Battle vs. Chess*. TopWare does not have a license to use Interplay's *Battle Chess* mark and has never sought approval to use any game design, artwork, software code, packaging or advertising with Interplay's mark. (*Id.* ¶ 15.)

//
//
//

# III.
# LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. The purpose of such injunctive relief is to preserve the rights and relative positions of the parties, i.e., the status quo, until a final judgment issues. *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)). An injunction is an exercise of a court's equitable authority, which should not be invoked as a matter of course, and "only after taking into account all of the circumstances that bear on the need for prospective relief." *Salazar v. Buono*, __ U.S. __, 130 S.Ct. 1803, 1816, 176 L.Ed.2d 634 (2010). A plaintiff seeking injunctive relief must show that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Toyo Tire Holdings Of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Natural Res. Def. Council, Inc.*, __ U.S. __, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)). An injunction may be appropriate when a plaintiff raises "serious questions going to the merits" and demonstrates that "the balance of hardships tips sharply in the plaintiff's favor." *Alliance For Wild Rockies v. Cottrell*, __ F.3d __, 2010 WL 3665149, at *8 (9th Cir. Sept. 22, 2010) (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)).

# IV.
# DISCUSSION

**A.     Interplay Demonstrates A Likelihood Of Success On The Merits**

In claims for trademark infringement under 15 U.S.C. § 1115, "the critical determination is 'whether an alleged trademark infringer's use of a mark creates a

5
ORDER GRANTING PRELIMINARY INJUNCTION

likelihood that the consuming public will be confused as to who makes what product.'" *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (quoting *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003)) (internal quotation marks omitted). To evaluate whether the use of a mark is likely to confuse consumers, courts consider eight non-exhaustive factors (the "*Sleekcraft* factors") whose relative importance will vary from case to case: "(1) the similarity of the marks; (2) the strength of the plaintiff's mark; (3) the proximity or relatedness of the goods or services; (4) the defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers of the defendant's product." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, __ F.3d __, 2010 WL 3258703, at *2 (9th Cir. Aug. 19, 2010) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). The inquiry may proceed in any order and a court need not address every factor. *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1162 (9th Cir. 2009), *cert. denied*, 130 S.Ct. 1739, 176 L.Ed.2d 213 (2010).

### 1. Similarity Of The Marks

The marks at issue are highly similar. TopWare's mark is identical to Interplay's mark but for the insertion of the abbreviated word "vs." in between the words "Battle" and "Chess." The concept of "vs.," however, already inheres in the word "battle" and does not distinguish TopWare's mark from *Battle Chess*. See *Twentieth Century Fox Film Corp. v. Marvel Enters.*, Inc., 220 F. Supp. 2d 289, 295 (S.D.N.Y. 2002) ("[T]he addition of descriptive terms does not alter a trademark such that a new mark is created."). In addition, the two marks look strikingly similar. Both use an "Old English" font style and the words "Battle" and "Chess" appear prominently in similar places. The "vs." in TopWare's mark is de-emphasized by its incorporation into sword artwork.

### 2. Proximity Of The Goods

The second *Sleekcraft* factor assesses whether the goods at issue are related or complementary. "Where the goods are related or complementary, the danger of confusion is heightened." *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1082 (9th Cir. 2005). Here, the two games are such close substitutes that they "would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076 n.10 (9th Cir. 2006) (quoting *Sleekcraft*, 599 F.2d at 348 n.10). Both *Battle Chess* and *Battle vs. Chess* are fantasy-themed games featuring duels between chess pieces. Courts have found relatedness in cases involving far more diverse products. *See, e.g., M2 Software*, 421 F.3d at 1082 (affirming finding that websites distributing audio CDs and music downloads were related notwithstanding that the music genres were "very significantly different"). The products at issue here are extremely related.

### 3. Marketing Channels Used

Both Interplay and TopWare distribute their products through the same types of marketing channels for use on the same video game platforms. Consequently, this factor also weighs toward a likelihood of consumer confusion.

### 4. Strength Of Interplay's Mark

The set of factors discussed *supra* "constitutes the most crucial body of the Sleekcraft analysis, and, in this case, . . . suggests that confusion is indeed likely." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000). Other factors also weigh toward finding consumer confusion.

Interplay has a relatively strong mark. Generally, "the more unique or arbitrary a mark, the more protection a court will afford it." *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1090 (9th Cir. 2010). In determining a mark's strength, "it is the mark in its entirety that must be considered—not simply individual elements of that mark." *GoTo.com*, 202 F.3d at 1207. While "battle"

and "chess" are both common English words, the combination of the two is not. Moreover, *Battle Chess* has been in use for more than twenty years, sold thousands of copies, and spawned multiple sequels. Thus, this factor also suggests a likelihood of confusion.

### 5. Degree Of Care Likely To Be Exercised By Consumers

The Court also considers the degree of care that consumers are apt to exercise when selecting *Battle Chess* or *Battle vs. Chess*. "[W]hen dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999). Here, TopWare's product sells for approximately $20 to $40 and the "retro" version of Interplay's product sells for approximately $6. The differential in pricing, while not vast, could make a difference to the discerning consumer. Therefore, the Court does not find that this particular factor necessarily militates toward a finding of confusion.

The Court finds that the above-enumerated factors are the most relevant in the likelihood of confusion analysis. Other factors, such as the defendant's intent in selecting the mark and evidence of actual confusion, are less helpful at this very early stage of the litigation prior to discovery and before TopWare has had an opportunity to respond. "[O]nly a subset of the *Sleekcraft* factors are needed to reach a conclusion as to whether there is a likelihood of confusion." *GoTo.com*, 202 F.3d at 1206.

On balance, the most relevant *Sleekcraft* factors suggest that consumers will be confused between *Battle Chess* and *Battle vs. Chess*. Therefore, the Court finds that Interplay has established a likelihood of success on the merits of its Lanham Act cause of action for trademark infringement.

### B. Interplay Demonstrates A Likelihood Of Irreparable Harm

Interplay also appears likely to suffer irreparable injury absent an injunction. Irreparable injury may be presumed in a trademark infringement claim from a

showing of likelihood of success on the merits. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009). Any negative consumer reaction to *Battle vs. Chess* will undoubtedly cause irreparable harm to the public image of Interplay's *Battle Chess* line of products. The harm will be especially acute because Interplay has a new version of its *Battle Chess* game that it expects to release sometime next year and this litigation is unlikely to be resolved before then.

**C.  The Balance Of Hardships Favors Interplay**

The balance of equities tips in favor of Interplay. Any potential harm to TopWare can be ameliorated through the bond that Interplay will post. Interplay, on the other hand, is unlikely to avoid injury absent an injunction.

The Court is cognizant that an injunction against TopWare may have the effect of delaying the release of its computer game. Nonetheless, "[t]rademark protection is not lost simply because the allegedly infringing use is in connection with a work of artistic expression." *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 n.11 (9th Cir. 1997) (quoting *Silverman v. CBS, Inc.*, 870 F.2d 40, 49 (2d. Cir. 1989)). Thus, an injunction, even one that prevents TopWare from releasing an artistic endeavor, does not constitute a prior restraint in violation of the First Amendment's free speech guarantee because the Lanham Act's prohibitions are content neutral. *See id.*

**D.  An Injunction Is In The Public Interest**

Finally, the Court must consider the public interest. Here, the minimal public interest in seeing *Battle vs. Chess* released does not outweigh the "public interest in protecting trademarks generally." *Brookfield Commc'ns*, 174 F.3d at 1066; *see also State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 715 (9th Cir. 2005) ("Trademarks protect the public from confusion by accurately indicating the source of a product. They preserve a producer's good will 'in order that the purchasing public may not be enticed into buying A's

product when it wants B's product.'" (quoting *Idaho Potato Comm'n v. M & M Produce Farm & Sales*, 335 F.3d 130, 138 (2d Cir. 2003)).

Consequently, the Court finds that a Preliminary Injunction is appropriate.

## V.
## CONCLUSION

In light of the foregoing, it is hereby ORDERED that:

1. Pending trial of this action Defendant TopWare Interactive, Inc., its officers, agents, employees, affiliated companies, and those in active concert or participation with them, ARE HEREBY ENJOINED FROM:

    a. Advertising, manufacturing, selling, and distributing video game software which contains "BATTLE CHESS" in any typographical format and phrase, including "*Battle vs. Chess*";

    b. Promoting or selling such goods and services on Internet websites, including but not limited to www.battlevschess.com, www.topware.com, www.southpeakgames.com, and retail websites; and

    c. Registering or attempting to register "*Battle vs. Chess*" or any confusingly similar designations, as a mark, business name, domain name, e-mail address, meta-tag or otherwise; and,

2. The above Preliminary Injunction shall become effective immediately on all persons who have actual knowledge of this Order and no additional security shall be required beyond the corporate security bond in the amount of $15,000 previously posted by Interplay.

IT IS SO ORDERED.

DATE: November 2, 2010

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE