Christopher J. Nelson, Esq. (CA Bar No. 205161)
cnelson@interplay.com
Interplay Entertainment Corp.
Suite 502
12301 Wilshire Boulevard
Los Angeles, CA 90025
(310) 979-7070
Fax: (310) 979-7171

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERPLAY ENTERTAINMENT CORP., <br><br> Plaintiff, <br><br> vs. <br><br> TOPWARE INTERACTIVE, INC., SOUTHPEAK INTERACTIVE CORPORATION, and Does 1-10, <br><br> Defendants. | Case No.: CV-10-7168 DMG(JCGx) <br><br> FIRST AMENDED COMPLAINT (JURY REQUESTED) <br><br> JUDGE: Dolly M. Gee <br> COURTROOM: 7 <br> TRIAL DATE: Not Set |

1. Plaintiff Interplay Entertainment Corp., by and through its undersigned attorneys, brings this action against Defendants TopWare Interactive, Inc., SouthPeak Interactive Corporation and Does 1-10, for damages resulting from trademark infringement, injunctive and other relief. In support of its First Amended Complaint, Interplay alleges as follows:

### NATURE OF THE ACTION

2. Interplay files this action to recover damages and to enjoin TopWare's, SouthPeak's and the Doe Defendants' continued infringement of

1

FIRST AMENDED COMPLAINT (JURY DEMANDED)

1 | Interplay's exclusive rights in the *Battle Chess* trademark, which Interplay has federally registered for use on goods relating to computer video games.

3. Interplay Entertainment Corp., founded in 1983, develops and publishes interactive video game software in the U.S. and internationally. In 1988, Interplay released the first in a series of successful software titles in its *Battle Chess* franchise. The original *Battle Chess* is a fantasy-themed computer chess game with three dimensional pieces that engage in animated combat as they maneuver around a virtual chess board.

4. In the more than twenty years since the release of the first game under the *Battle Chess* trademark, Interplay developed and published several additional iterations of *Battle Chess* with different themes but based around the common formula. Interplay's *Battle Chess* games were marketed, distributed and sold worldwide. Interplay also has a new *Battle Chess* game in development targeted for a 2011 release date on multiple game platforms, including game consoles, PCs, and handheld devices.

5. On information and belief, TopWare, SouthPeak and the Doe Defendants are marketing and promoting their own fantasy-themed combat chess game, entitled "Battle vs. Chess." This mark is confusingly similar to Interplay's registered mark because it is attached to a video game product that is nearly identical in concept to Interplay's *Battle Chess* and which will be sold to the same target customers through the same or similar distribution channels. In fact, the Defendants' mark so closely reproduces Interplay's *Battle Chess* mark as to be counterfeit, copy or colorable imitation of *Battle Chess*.

6. By letter on or about June 9, 2010, Interplay alerted TopWare and SouthPeak to its concerns regarding the infringing Battle vs. Chess mark and requested that TopWare and SouthPeak discontinue use of the confusingly similar trademark in association with fantasy chess video games. TopWare and SouthPeak disregarded Interplay's request and along with the Doe Defendants continue to use

the Battle vs. Chess mark to dilute and trade upon the good will inherent in Interplay's *Battle Chess* registered trademark.

7. TopWare, SouthPeak and the Doe Defendants' use of Battle vs. Chess constitutes willful trademark infringement, resulting in immediate, substantial, and irreparable harm to Interplay. Interplay therefore seeks to enjoin TopWare and the Doe Defendant's ongoing willful acts through this action.

## PARTIES

8. Plaintiff Interplay is a Delaware corporation with its principal place of business at Los Angeles, California. Interplay is an award-winning developer, licensor and publisher of video game software for computers, video game consoles, handheld devices, and mobile phones. Interplay is the exclusive owner of the federal registration for the *Battle Chess* trademark (U.S. Reg. No. 3,519,445).

9. Upon information and belief, TopWare Interactive, Inc. is a corporation, incorporated in Nevada, with its principal place of business located at 625 2nd Street, Suite 102, Petaluma, California. TopWare, on information and belief, develops and publishes video game software.

10. Upon information and belief, SouthPeak Interactive Corporation is a corporation, incorporated in Delaware, with its principal place of business located in Midlothian, Virginia. SouthPeak, on information and belief, develops, publishes and distributes video game software.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over this Complaint and this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. §§ 1116 and 1121. Pursuant to principles of supplemental jurisdiction and 28 U.S.C. § 1367(a), this Court's jurisdiction extends to Interplay's claims for common law trademark infringement and unfair competition under the laws of the State of California because Interplay's federal and state claims are based on the same

FIRST AMENDED COMPLAINT (JURY DEMANDED)

operative facts and judicial economy, convenience and fairness to the parties will result if this Court assumes and exercises jurisdiction over such state law claims.

12. This Court has personal jurisdiction over Defendant TopWare and Does 1-10, and venue is proper because TopWare maintains sales and marketing offices in this State, transacts and solicits business in this District regularly, and Defendant's contacts with this District are purposeful, systematic and continuous, and have been for a period of several years.

13. Similarly, SouthPeak transacts and solicits business in this District regularly, and Defendant's contacts with this District are purposeful, systematic and continuous, and have been for a period of several years.

14. On information and belief, Defendants market and sell their products in interstate commerce. Defendants' intentional actions in and aimed at California caused the harms alleged herein, which Defendants knew would be suffered in this District.

**FACTS COMMON TO ALL CLAIMS**

15. This lawsuit stems from Defendants' continuing and unauthorized use of trademarks that are so confusingly similar to Interplay's federally registered trademark *Battle Chess* as to be considered identical, or nearly so. Interplay owns long standing rights in the *Battle Chess* trademark for video games and related goods. Interplay has used the *Battle Chess* mark to designate its goods continuously for more than 20 years. Interplay's *Battle Chess* mark is duly and properly registered with the United States Patent and Trademark Office on the Principal Register. The registration is valid and in full force and effect. A true and correct copy of Interplay's most recent *Battle Chess* trademark registration, U.S. Reg. No. 3,519,445, is attached hereto as Exhibit A.

16. Interplay has used the *Battle Chess* mark in interstate commerce continuously since at least 1988, and has not abandoned its rights in the *Battle*

*Chess* mark. Interplay is currently developing a *Battle Chess* game that is scheduled for release in 2011.

17. As a result of Interplay's efforts to finance, develop, market, promote and sell *Battle Chess* video games over more than two decades and as a result of the inherent distinctiveness of the *Battle Chess* mark, Interplay's customers and the general public have come to know and recognize the *Battle Chess* mark and to associate the mark with Interplay. Interplay thus has built up extensive goodwill in connection with offering its goods under the *Battle Chess* mark. Consequently, the *Battle Chess* mark is extremely valuable and important to Interplay.

18. In or about May 2010, Interplay became aware that TopWare and SouthPeak were advertising, marketing, selling and promoting a fantasy combat chess video game in interstate commerce under the title "Battle vs. Chess." Upon information and belief, Defendants began advertising, marketing, promoting, and selling Battle vs. Chess after Interplay's release of *Battle Chess* and after Interplay's registration of the *Battle Chess* trademark. TopWare has licensed third parties, including SouthPeak, to publish and distribute Battle vs. Chess using the infringing mark.

19. In June 2010, Interplay wrote to TopWare and SouthPeak, informing them that Interplay owns the registered *Battle Chess* trademark and requesting that they cease and desist from infringing and diluting Interplay's mark. Defendants ignored Interplay's request and continued to market, promote, and sell their game using the infringing Battle vs. Chess title.

20. Defendants advertise and market, or have advertised and marketed, their video game using the infringing mark on various internet web sites, including but not limited to www.battlevschess.com and www.southpeak.com. Defendants also list their infringing video game for pre-order sales through major retailers, including Target, Best Buy, GameStop, Fry's Electronics and others.

21.     On information and belief, Defendants have secured wholesale orders for tens of thousands of units of their products on at least five different video game platforms after marketing and promoting it using the infringing Battle vs. Chess mark.  On information and belief retail customers also are able to purchase and have purchased copies of Defendants' infringing video game through retail "pre-orders."

22.     In August 2010, Interplay again wrote to TopWare and SouthPeak to request that Defendants cease and desist from infringing and diluting Interplay's federally registered *Battle Chess* mark.  Defendants refused to comply and instead, on or about September 2, 2010, South Peak, issued a press release announcing that Battle vs. Chess would be released commercially on or about September 28, 2010.

23.     On or about September 3, 2010, Interplay again demanded that Defendants cease and desist use of the infringing Battle vs. Chess mark. Nevertheless, Defendants continue the infringing activities complained of herein.

24.     Defendants have since modified the release date several more times but continue to sell and promote their infringing products.  In a conference call with its investors, on or about October 13, 2010 -- after the initiation of this lawsuit and the issuance of a temporary restraining order prohibiting TopWare and those acting in concert with it from using the Battle vs Chess mark, SouthPeak's Chairman of the Board, Terry Phillips, announced that SouthPeak intends to ship Battle vs. Chess sometime during the fourth quarter of 2010.

25.     On information and belief, Defendants will soon begin or have already begun manufacturing the physical media containing their video game software for shipment to retailers using the title Battle vs. Chess, which infringes on Interplay's federally registered *Battle Chess* trademark.

26.     Defendants are well aware of Interplay's exclusive rights in the *Battle Chess* mark because the mark is federally registered with the United States Patent and Trademark Office.

FIRST AMENDED COMPLAINT (JURY DEMANDED)

27. Defendants' use of the name "Battle vs. Chess" is confusingly similar to Interplay's *Battle Chess* mark in meaning, appearance, sound, and overall commercial impression and is so similar as to be considered identical to or a colorable imitation of Interplay's registered trademark.

28. Defendants' use of the name "Battle vs. Chess" trades on the good will of Interplay's longstanding *Battle Chess* mark and is without permission or license from Interplay.

29. Defendants advertise, market, and sell their "Battle vs. Chess" product in commerce using a name which is confusing similar to Interplay's *Battle Chess* and both Interplay and Defendants use the same channels of trade.

30. Defendants' use of "Battle vs. Chess" to promote their products falsely indicates to the purchasing public that Defendants' products are affiliated with, associated with, authorized, approved, or otherwise connected to Interplay, and deprives Interplay of the ability to control the nature and quality of the products associated with its *Battle Chess* mark.

31. On information and belief, Defendants' actions complained of herein have been willful, deliberate, malicious, intentional and in bad faith. Defendants act with full knowledge and conscious disregard of Interplay's rights in the *Battle Chess* trademark and with the intent to trade on Interplay's substantial good will in the *Battle Chess* mark.

32. Interplay has no adequate remedy at law and, if Defendants' conduct is not enjoined, Interplay will suffer imminent, irreparable harm to its business, reputation and the good will of its *Battle Chess* trademark.

## FIRST CAUSE OF ACTION
## PRELIMINARY INJUNCTION

33. Interplay incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

FIRST AMENDED COMPLAINT (JURY DEMANDED)

34. Unless this court enjoins Defendants' activities, Defendants will continue to advertise, promote, manufacture, distribute and sell "Battle vs. Chess," and otherwise continue to willfully violate Interplay's trademark rights by using in commerce words that constitute a false designation of origin, false or misleading description, or misrepresentation of fact, which is likely to cause confusion among consumers.

35. Interplay is likely to suffer irreparable injury if it is denied preliminary relief.  The irreparable injury to Interplay is ongoing as a result of Defendants advertising and marketing campaigns, solicitation of tens of thousands of wholesale orders from retailers, and pre-order retail sales to video game consumers, and will grow worse if the Court permits Defendants to manufacture their infringing product and ship it to retailers.

36. The benefits to Interplay in obtaining a preliminary injunction are equal to or outweigh the potential harm, if any, which Defendants would incur if the Court denies the preliminary injunction.

37. Interplay is suffering, has suffered, and will continue to suffer, immediate, substantial, irreparable harm to its business, reputation, and goodwill unless this Court enjoins Defendants from advertising, marketing, promoting, manufacturing, distributing, and selling "Battle vs. Chess."

38. Unless the Court issues a preliminary injunction Defendants will continue to engage in unauthorized advertising, manufacture, and sales of their infringing products, which will irreparably harm Interplay by confusing consumers and decreasing sales of Interplay's legitimate *Battle Chess* games.  Defendants would be unjustly enriched as a result of their unlawful acts.

39. There is a strong likelihood that Interplay will succeed on the merits of its claims.

40. Interplay's remedy at law is inadequate to address Defendants' conduct.

## SECOND CAUSE OF ACTION
## **PERMANENT INJUNCTION**

41. Interplay incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

42. Unless this Court permanently enjoins Defendants' activities, Defendants will continue to advertise, promote, manufacture, distribute and sell "Battle vs. Chess," and otherwise continue to willfully violate Interplay's trademark rights by using in commerce words that constitute a false designation of origin, false or misleading description, or misrepresentation of fact, which is likely to cause confusion among consumers.

43. Interplay is likely to suffer irreparable injury if it is denied permanent relief. The irreparable injury to Interplay is ongoing as a result of Defendants' advertising and marketing campaigns, Defendants' solicitation of tens of thousands of wholesale orders from retailers, and pre-order retail sales to video game consumers, and will grow worse if the Court permits Defendants to manufacture their infringing product and ship it to retailers.

44. The benefits to Interplay in obtaining a permanent injunction are equal to or outweigh the potential harm, if any, which Defendants would incur if the Court denies the permanent injunction.

45. Interplay is suffering, has suffered, and will continue to suffer, immediate, substantial, irreparable harm to its business, reputation, and goodwill unless this Court permanently enjoins Defendants from advertising, marketing, promoting, manufacturing, distributing, and selling "Battle vs. Chess." Unless the Court issues a permanent injunction Defendants will continue to engage in unauthorized advertising, manufacture, and sales of their infringing products, which will irreparably harm Interplay by confusing consumers and decreasing sales of Interplay's legitimate *Battle Chess* games. Defendants would be unjustly enriched as a result of their unlawful acts.

46. There is a strong likelihood that Interplay will succeed on the merits of its claims.

47. Interplay's remedy at law is inadequate to address Defendants' conduct.

## THIRD CAUSE OF ACTION
## TRADEMARK INFRINGEMENT
### (15 U.S.C. §§ 1114, 1125)

48. Interplay incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

49. Interplay is the owner of the United States Trademark "*Battle Chess*," U.S. Registration No. 77359901, which confers upon Interplay exclusive rights to use the *Battle Chess* mark in connection with, "computer programs for video games and computer games and instruction manuals sold as a unit with the games, and computer programs for video games and computer games which may be downloaded from a global computer network."

50. Interplay has used the *Battle Chess* mark continuously in interstate commerce since at least 1988 and has not abandoned its rights in the *Battle Chess* mark.

51. As a result of Interplay's efforts to finance, develop, market, promote and sell *Battle Chess* video games over more than two decades and as a result of the inherent distinctiveness of the *Battle Chess* mark, Interplay's customers and the general public have come to know and recognize the *Battle Chess* mark and to associate the mark with Interplay. Interplay thus has built up extensive goodwill in connection with offering its goods under the *Battle Chess* mark. Consequently, the *Battle Chess* mark is extremely valuable and important to Interplay.

52. Upon information and belief, without Interplay's approval or consent and having actual knowledge of Interplay's exclusive rights to the *Battle Chess* trademark, Defendants are advertising, marketing, manufacturing, distributing and

FIRST AMENDED COMPLAINT (JURY DEMANDED)

selling or offering for sale in interstate commerce "Battle vs. Chess," which is confusingly similar to *Battle Chess*.

53. Upon information and belief, Defendants have chosen the name "Battle vs. Chess" with the intent to trade upon and exploit the success and notoriety of Interplay's *Battle Chess* game software, which has been commercially available since 1988.

54. Upon information and belief, without Interplay's approval or consent and having actual knowledge of Interplay's exclusive rights to the *Battle Chess* trademark, Defendants are advertising, marketing, manufacturing, distributing and selling or offering for sale in interstate commerce counterfeit goods in the form of video game products identified and marked with an reproduction, counterfeit, copy or colorable imitation of Interplay's *Battle Chess* trademark.

55. Defendants' advertising, marketing, manufacturing, distributing and selling or offering for sale "Battle vs. Chess" is likely to cause confusion and to deceive the general purchasing public as to the origin of the game, which is detrimental to and damages Interplay's reputation, good will and sales.

56. These acts by Defendants constitute infringement of Interplay's federally registered trademark rights, in violation of the Lanham Act, Section 32, 15 U.S.C. § 1114(a) and (b).

57. Interplay has suffered, is suffering, and will continue to suffer irreparable harm and damage due to Defendants' wrongful conduct. Unless enjoined, Defendants will persist in the unlawful conduct complained of herein, causing irreparable damage to Interplay's reputation, sales and business. Interplay's remedy at law is inadequate to redress the injuries it has and will suffer.

58. Defendants' wrongful acts have caused Interplay substantial monetary damages, which are continuing in an amount to be determined at trial.

59. Defendants' infringing conduct has been committed with full knowledge of Interplay's exclusive rights to the *Battle Chess* mark and Defendants

FIRST AMENDED COMPLAINT (JURY DEMANDED)

continue the complained of acts of intentional infringement. Consequently, Interplay is entitled to an award of treble damages and Defendants' profits, plus attorney's fees and costs in bringing and maintaining this action pursuant to 15 U.S.C. § 1117(b) or, in the alternative, statutory damages as allowed by 15 U.S.C. § 1117(c).

## FOURTH CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES
### (Cal. Bus. and Prof. Code § 17200, *et seq.*)

60. Interplay incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

61. Upon information and belief, without Interplay's approval or consent and having actual knowledge of Interplay's exclusive rights to the *Battle Chess* trademark, Defendants are advertising, marketing, manufacturing, distributing and selling video game software titled "Battle vs. Chess," which is confusingly similar to *Battle Chess*.

62. Defendants have both constructive and actual knowledge of Interplay's rights to the *Battle Chess* trademark and their intentional use of the title "Battle vs Chess" deceives consumers as to the origin or authenticity of their product and falsely implies approval or endorsement by Interplay.

63. Defendants actions as described herein constitute unfair competition and unlawful, unfair and fraudulent business practices prohibited by Cal. Bus. and Proc. Code §17200, et seq.

64. Interplay has suffered, is suffering, and will continue to suffer irreparable harm and damage due to Defendants' wrongful conduct. Unless enjoined, Defendants will persist in the unlawful conduct complained of herein, causing irreparable damage to Interplay's reputation, sales and business. Interplay's remedy at law is inadequate to redress the injuries it has and will suffer.

65. Defendants, through their unfair, unlawful, and fraudulent conduct, have obtained financial benefits at Interplay's expense, which harm to Interplay is continuing.  Consequently, Interplay is entitled to restitution of any money or property acquired by Defendants as a result of their unfair competition.

//

//

//

FIRST AMENDED COMPLAINT (JURY DEMANDED)

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Interplay respectfully requests that this Court grant the following relief against Defendants:

A. An order preliminarily and permanently enjoining Defendants and all agents, servants, employees, and other persons acting in concert or participating with Defendants from the advertising, use, manufacture, distribution, and promotion of "Battle vs. Chess" and any other product that bears a mark that is confusingly similar to, identical to, or colorable imitation of *Battle Chess*;

B. An order preliminarily and permanently enjoining Defendants and all agents, servants, employees, and other persons acting in concert or participating with Defendants from inducing or contributing to infringement of Interplay's *Battle Chess* mark.

C. An order requiring Defendants to file with the Court and serve on Interplay within ten days after the entry and service upon TopWare of an injunction, a written report under oath that details the manner and form in which Defendants have undertaken to comply with the injunction, pursuant to the Lanham Act, Section 34(a), 15 U.S.C. § 1116(a);

D. An entry of judgment:

1. that Defendants have willfully infringed Interplay's federally registered rights in the *Battle Chess* trademark (U.S. Reg. No. 3,519,445);

2. that Defendants have committed and are committing acts of false designation of origin, false or misleading description of fact, or false or misleading representations in violation of Interplay's rights under 15 U.S.C. § 1125(a);

3. that Defendants have reproduced, counterfeited, copied, or colorably imitated Interplay's registered *Battle Chess* mark and applied such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce or in connection with the sale, offering for sale, distribution, or

FIRST AMENDED COMPLAINT (JURY DEMANDED)

advertising of goods and that such use is likely to cause confusion, or mistake, or to deceive consumers as prohibited by 15 U.S.C. § 1114(b); and

   3. that Defendants engaged in unfair competition in violation of California law.

 E. An order for Defendants to pay Interplay's general, special, actual, and statutory damages:

   1. Interplay's damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a), trebled damages pursuant to 15 U.S.C. § 1117(b) for Defendants' willful violations of Interplay's registered trademark, or

   2. Statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $200,000 per mark per type of goods sold or offered for sale and up to $2,000,000 per mark per type of goods sold or offered for sale upon a finding that Defendants' conduct was willful.

 F. An award to Interplay of its reasonable attorney's fees as allowed by law.

 G. An award to Interplay of its reasonable costs in this action as allowed by law.

 H. And for such other, further relief as the Court deems reasonable, just, and proper under the circumstances.

Dated: November 17, 2010

By: _____
Christopher J. Nelson, Esq.

*Attorney for Plaintiff*
*Interplay Entertainment Corp.*

**JURY REQUESTED**

Interplay Entertainment Corp. hereby requests a trial by jury.

Dated: November 17, 2010

By: _____
Christopher J. Nelson, Esq.

*Attorney for Plaintiff*
*Interplay Entertainment Corp.*