1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11 INTERPLAY ENTERTAINMENT )    Case No. CV 10-07168 DMG (JCGx)
12 CORP., )    **ORDER RE PLAINTIFF'S MOTION**
      )    **FOR DEFAULT JUDGMENT**
13               Plaintiff, )
14        v. )
15 TOPWARE INTERACTIVE, INC., et al., )
16               Defendants. )

17

18       This matter is before the Court on Plaintiff's Motion for Default Judgment. The
19 Court held a hearing on April 6, 2012, at which counsel for Plaintiff appeared. For the
20 reasons set forth below, Plaintiff's Motion is GRANTED.

21

**I.**

22

**PROCEDURAL HISTORY**

23       On November 17, 2010, Plaintiff Interplay Entertainment Corp. filed the operative
24 first amended complaint against Defendants TopWare Interactive, Inc. and SouthPeak
25 Interactive Corporation raising causes of action under the Lanham Act, 15 U.S.C. § 1051
26 *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*
27 [Doc. # 1]. On February 15 and 18, 2011, Plaintiff filed proofs of service indicating that

28

it personally served Defendants TopWare and SouthPeak on February 2 and 15, 2011, respectively.  [Doc. ## 18, 20].

Defendant TopWare filed its answer to the first amended complaint on February 25, 2011 [Doc. # 22].   Defendant SouthPeak filed its answer to the first amended complaint and counterclaim on March 25, 2011 [Doc. # 27].  On December 19, 2011, the Court granted the motion by TopWare's counsel to withdraw from the representation [Doc. # 47].  Because TopWare failed to retain new counsel and the Local Rules do not permit a corporate entity to proceed *pro se*, *see* C.D. Cal. L.R. 83-2.10.1, the Court struck TopWare's answer and entered its default on February 6, 2012 [Doc. # 49].  The Court also granted the motion by SouthPeak's counsel to withdraw from the representation and granted SouthPeak until April 16, 2012 to obtain new counsel or have its answer stricken [Doc. # 62].  On March 7, 2012, Plaintiff filed an application for default judgment against TopWare [Doc. # 60].

## II.

## FACTUAL BACKGROUND

The factual background to this dispute is set forth in the Court's Order Granting Preliminary Injunction.  *See Interplay Entm't Corp. v. TopWare Interactive, Inc.*, 751 F. Supp. 2d 1132, 1134-35 (C.D. Cal. 2010).  Plaintiff produces the *Battle Chess* series of video games.  TopWare is a competitor that produces the game at issue here, *Battle vs. Chess*.  Plaintiff contends that *Battle vs. Chess* infringes its trademarks in *Battle Chess*.

## III.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) provides that a court may enter default judgment and, if necessary to effectuate judgment, the court may conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.  Default judgments are usually disfavored.  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).  In *Eitel*, the Ninth Circuit set forth a number of factors that courts may consider when evaluating a default judgment application:  (1) the

possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Id.* at 1471-72 (citing 6 *Moore's Federal Practice* ¶ 55-05[2]).  In evaluating a motion for default judgment, a court deems the complaint's factual allegations, other than those relating to the amount of damages, to be true.  *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (quoting *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)).

## IV.

## <u>DISCUSSION</u>

### A.   <u>Sufficiency And Merits Of The Complaint</u>

Plaintiff moves for default judgment on its cause of action against TopWare for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.  To prevail on a trademark infringement claim, a plaintiff must show that it has a valid, protectable trademark and that use of the defendant's mark is likely to cause consumer confusion. *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009) (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005)). Plaintiff's allegations establish both prongs.  Registration of a mark with the USPTO constitutes *prima facie* evidence of its validity and of the registrant's exclusive right to use it.  *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 597 (9th Cir. 2010) (quoting *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007)).  Moreover, Plaintiff alleges that TopWare employs marks on its products that are substantially similar to Plaintiff's marks.  Plaintiff thus establishes a likelihood of consumer confusion.

Plaintiff's allegations, when taken as true, show that it is likely to succeed on the merits of its cause of action for trademark infringement.  Therefore, this factor favors default judgment.

**B.      Other *Eitel* Factors**

     **1.      Possibility Of Prejudice To Plaintiff**

     Plaintiffs will generally be prejudiced if a court declines to grant default judgment where, as here, they lack other recourse to recover damages for their injury or means to prevent the defendant from causing them further harm.  *See, e.g.*, *IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054-55 (N.D. Cal. 2010).  Accordingly, this factor also favors default judgment.

     **2.      Sum Of Money At Stake**

     The next factor involves balancing the amount of money at issue with the seriousness of the defendant's conduct.  Plaintiff requests a statutory damage award of $800,000 for the alleged infringement.  Trademark infringement is, without doubt, a serious offense.  Here, TopWare used a substantially similar mark on its competing products so as to profit from the goodwill associated with Plaintiff's mark.  Because the seriousness of this offense is not disproportionate to the amount of damages sought, this factor favors default judgment.

     **3.      Possibility Of Dispute Concerning Material Facts**

     Given the ample evidence in the record of TopWare's actions—including photos of both products enabling the Court to compare Plaintiff's mark with TopWare's infringing mark—there is little possibility of a serious dispute as to material facts.  Therefore, this factor weighs in favor of entering default judgment.

     **4.      Existence Of Excusable Neglect**

     There is no evidence that TopWare has failed to defend against this lawsuit due to excusable neglect.  Plaintiff personally served it with a copy of the summons and complaint.  Pursuant to the Court's December 19, 2011 Order granting defense counsel's motion to withdraw from the representation of TopWare, defense counsel served a copy of the Order on TopWare and conveyed critical information to it, including that TopWare cannot represent itself and could lose this case if it fails to retain counsel.

Notwithstanding receipt of this information, TopWare did not notify the Court that it had obtained replacement counsel or seek additional time to do so. This apparent lack of excusable neglect favors default judgment.

### 5. Policy Favoring Decisions On The Merits

Although default judgment is disfavored, a decision on the merits is impractical, if not impossible, when the defendant takes no part in the action. *See Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1093 (N.D. Cal. 2008). This factor thus weighs weakly against default judgment.

### 6. Balancing The Factors

On balance, the *Eitel* factors favor default judgment. Plaintiff's allegations, taken as true, establish TopWare's liability and these allegations are supported by the evidence in the record. Therefore, the Court finds that Plaintiff is entitled to default judgment.

## C. Damages

In addition to permanent injunctive relief, Plaintiff seeks statutory damages in the amount of $800,000, post-judgment interest, and reasonable attorneys' fees. (Mot. at 3.) In a case involving a counterfeit mark or designation, the Lanham Act provides for either three times the plaintiff's actual damages, 15 U.S.C. § 1117(b), or statutory damages in an amount between $1,000 and $200,000 or, upon a finding of willful infringement, between $1,000 and $2 million "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," *id*. § 1117(c). A court can infer willfulness from a defendant's failure to defend. *See Derek Andrew*, 528 F.3d at 702 (holding that all factual allegations in the complaint are deemed true, including the allegation of the defendant's willful infringement of the plaintiff's trademarks).

Statutory damages are generally appropriate where compensatory damages cannot be ascertained or are too slight to warrant the expense of determining them but where deterrence would be served by a money judgment. *Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 698 (7th Cir. 2009) (citing *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010-11 (9th Cir. 1994)). A court has wide discretion

in determining the amount of statutory damages to award. *RingCentral v. Quimby*, 711 F. Supp. 2d 1048, 1065 (N.D. Cal. 2010) (citing *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001)), *vacated on other grounds*, 781 F. Supp. 2d 1007 (2011).

It is plain, however, that TopWare's mark is not a "counterfeit" mark. Although the Lanham Act does not define the term "counterfeit" in any helpful way, *see* 15 U.S.C. § 1116(d)(1)(B) ("[T]he term 'counterfeit mark' means . . . a counterfeit of a mark . . . ."), it implies that "counterfeit" means more than just substantially or confusingly similar. *Cf.* 15 U.S.C. § 1116(d)(1)(B)(ii) (including in the definition of "counterfeit mark" a "spurious designation that is *identical* with, or *substantially indistinguishable* from," a protected designation used by the United States Olympic Committee) (emphasis added).

> Counterfeiting is the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark. A "counterfeit mark" is a false mark that is identical with, or substantially indistinguishable from, the genuine mark.

> Often, counterfeit merchandise is made so as to imitate a well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise. Thus, counterfeiting is "hard core" or "first degree" trademark infringement and is the most blatant and egregious form of "passing off."

J. Thomas McCarthy, 4 *McCarthy on Trademarks and Unfair Competition* § 25:10 (4th ed. 2012).

Thus, a counterfeit mark is more than a design that is likely to cause confusion with the plaintiff's mark—even if the defendant intended the confusion. Rather, a counterfeit mark is an unauthorized duplication or something proximal. *See Sakar Int'l, Inc. v. United States*, 516 F.3d 1340, 1346 n.5 (Fed. Cir. 2008) ("Merchandise bearing a 'counterfeit mark' is thus a subset of merchandise that merely [creates a "likelihood of confusion" with] a registered mark."); *Montres Rolex, S.A. v. Snyder*, 718 F.2d 524, 527

(2d Cir. 1983) (describing a "two-tier classification scheme" of "marks which are merely infringements, judged by whether they are likely to cause the public to associate the copying mark with the recorded mark" and "marks which not only infringe but in addition are such close copies that they amount to counterfeits"); *cf. United States v. Petrosian*, 126 F.3d 1232, 1234 (9th Cir. 1997) (*per curiam*) (analyzing whether a spurious mark was "likely to cause confusion" separately from analyzing whether it was "identical with or substantially indistinguishable from" the registered mark under the parallel criminal statute, 18 U.S.C. § 2320(d)(1)).

Although TopWare's product design and name are confusingly similar to Plaintiff's, the two products are distinguishable.  Thus, TopWare's product is not a counterfeit.  Consequently, Plaintiff may only recover (1) TopWare's profits; (2) any damages sustained by Plaintiff; (3) the costs of the action; and (4) in "exceptional cases," reasonable attorneys' fees.  15 U.S.C. § 1117(a).  Here, however, Plaintiff does not provide any proof of TopWare's sales as required.  *See id*.  Therefore, Plaintiff may recover only costs and attorneys' fees.

In addition, pursuant to 15 U.S.C. §§ 1117(d) and 1125(d)(1), Plaintiff may recover statutory damages of between $1,000 and $100,000 based on TopWare's use of the website www.battlevschess.com.  (*See* Caen Decl. ¶ 5, Ex. 2 [Doc. # 60-2].)  Given TopWare's clear intent to profit from confusion with Plaintiff's mark, the Court finds that the maximum award—$100,000—is appropriate.

**D.   Plaintiff Has Met The Procedural Requirements**

Plaintiff has obtained an entry of default against TopWare in compliance with Federal Rule of Civil Procedure 55(a).  Plaintiff served TopWare with its Motion for Default Judgment at least seven days before the hearing in compliance with Rule 55(b)(2).  (Notice of Motion at 3.)  Local Rule 55-1 requires the party seeking default judgment to submit a declaration stating (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is

represented; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. app. § 501 *et seq.*, does not apply; and (5) that notice has been served, if required, on the defaulting party. Plaintiff has complied with the applicable provisions of Local Rule 55-1.  (*See* Nelson Decl. ¶¶ 2-4 [Doc. # 65].)

## V.

## CONCLUSION

In light of the foregoing, Plaintiff's Motion for Default Judgment is **GRANTED** as follows:

1. Judgment shall be entered in favor of Plaintiff Interplay Entertainment Corp. and against Defendant TopWare Interactive, Inc. on Plaintiff's cause of action for trademark infringement in the amount of $100,000, plus taxable costs, reasonable attorneys' fees, and post-judgment interest.

2. Defendant TopWare Interactive, Inc., its officers, agents, employees, affiliated companies, and those in active concert or participation with them, are permanently restrained and enjoined from:

   a. Advertising, manufacturing, selling, and distributing video game software which contains "BATTLE CHESS" in any typographical format and phrase, including "Battle vs. Chess";

   b. Promoting or selling such goods and services on Internet websites, including but not limited to www.battlevschess.com, www.topware.com, www.southpeakgames.com, and retail websites; and

c. Registering or attempting to register "Battle vs. Chess" or any confusingly similar designations, as a mark, business name, domain name, e-mail address, meta-tag or otherwise.

**IT IS SO ORDERED.**

DATED:     April 13, 2012

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE